Alcibiade Deblanc, Tutor, etc., v. Pierre Gary, Administrator.

## No. 634.—Alcibiade Deblanc, Tutor, etc., v. Pierre Gary, Administrator.

The surviving husband having qualified as natural tutor to his minor children, and caused an inventory of the community property to be made, and on that basis caused the one-half interest of the wife in the community to be adjudicated to him, for which he executed a special mortgage in favor of the heirs on his own property, and he dies, and a dative tutor is appointed to represent his minor children; the dative tutor, thus appointed, may vote at the deliberations of the creditors to dispose of the property of the deceased, an insolvent.

The dative tutor as mortgagee for the minors, without reference to the amount, may demand as against the ordinary creditors, that the property be sold for cash or part cash.

A peremptory exception that the petition discloses no cause of action, admits for the purpose of its consideration, all the allegations in the petition to be true.

APPEAL from the District Court, parish of St. Martin. *Gates*, J. *R. Perry*, for plaintiff and appellant, *Gary & Fournet*, and *A. & F. Voorhies*, for defendant and appellee.

Howe, J. In the year 1856, Désiré Béraud was confirmed as natural tutor of his minor children, Corinne and Désiré, issue of his marriage with Corinne Deblanc. An inventory of the property owned in community with the deceased wife was made, amounting to $5178. The debts of the community were $1500. By the advice of a family meeting, the proceedings of which were homologated by a judgment of the court of March 10, 1856, the property belonging to the community was adjudicated to the surviving husband, including the lots of ground hereinafter mentioned, and a mortgage retained to secure the share of the minors. The certificate of adjudication was recorded March 11, 1856. In 1865 Désiré Béraud, the elder, died insolvent. At a meeting of creditors, a majority in number and amount voted to sell the property on a credit of one, two and three years.

The plaintiff in this case, who had in the meantime been appointed dative tutor of the minors, voted in favor of selling the immovable property mortgaged in their favor for one-half cash and the balance on a credit of about one year.

Upon the petition of the defendant, who had been appointed and qualified as administrator, the proceedings of the meeting of creditors were ordered by the clerk of the court to be homologated and carried into effect, and the property sold on a credit of one, two and three years.

The sale being advertised, the plaintiff brought this suit to enjoin the same. He alleged in his petition the indebtedness of the deceased, Béraud, to the wards, secured by tacit mortgage on his property, and by special mortgage on certain lots in St. Martinsville, adjudicated to him as before mentioned in 1856; that at the death of the minors' mother he was in good circumstances, and none of the debts now claimed against his succession were in existence, that at the meeting of creditors of Béraud the plaintiff had voted in the manner we have mentioned, but that in disregard of the conditions of sale fixed by him

the defendant was about to sell on other and different terms the property subject to the tacit and special mortgages of the minors, and that the minors actually stood in need of the proceeds or a portion thereof.

The defendant filed a peremptory exception, that the petition disclosed no cause of action, inasmuch as it appeared by the petition itself that the minors' rights have not been previously settled and liquidated as the law contemplates, in order to enable the minors' tutor to vote in the deliberation of creditors.

The court sustained the exception, and dismissed the suit, and the plaintiff has appealed.

Our insolvent laws provide that the wife in partnership with her husband or *his* heirs shall not be allowed to vote in the deliberations of creditors, unless their rights shall have been previously settled by a partition or a judgment for a separation of goods.

" *His* heirs" is probably a typographical error for " *her* heirs," as the statute refers to a living insolvent, and the latter phrase is used in the law of 1842. Statutes 1855, p. 434, § 16; See also the French text.

It is also provided in respect to insolvent successions, that, in the choice of syndic, the sale of property, and the administration and settlement of the estate, the same forms shall be observed as are prescribed for the administration of estates ceded by insolvent debtors, reserving to the heirs all their rights and claims as creditors. Statutes of 1855, p. 399, § 4.

Under similar provisions of law it was held in the case of Lesseps *v.* His Creditors, 7 Ann. 624, which was a contest for the election of a syndic, that the votes given by the daughter of the insolvent and by the insolvent himself as tutor of his minor children were illegally given, because the community right of their deceased mother "had not been previously settled by a deed of partition or judgment for a separation of property." But that case differs from the one at bar in some important features. The question was of the election of a syndic, and that was to be determined by a majority of creditors in amount, and a single dollar might have decided the contest between the rival candidates. In such a contest, the exact amount of the minors' claim might be of supreme moment; but in the case at bar it might be sufficient to maintain the plaintiff's action that the claim of the minors as mortgagees should be established for any sum, since a mortgagee even for the smallest amount has a right, as against the ordinary creditor, to claim a sale for cash or partly cash. Statute of 1855, p. 434, § 17.

Again, in the case of Lesseps, a protest was made before the notary against the votes, and the judgment which declared them valid was appealed from. In the case at bar, no exception was made to the vote of plaintiff, which was founded upon his uncontradicted affidavit of the amount due.

But a more important distinction than either of these is, that while in the case of Lesseps there had been no settlement of the rights of the heir and minors, and votes in their behalf were properly decided to have been illegally received, in the case at bar it appears that long ago, at a time free from suspicion, when Béraud was in good circumstances, and owed none of the debts which now encumber his succession, the property of the community, which had existed between him and the mother of the minors, was inventoried and appraised, and then adjudicated to him at the estimated price. A definite debt was thus established, a definite mortgage created. The practical effect of the adjudication was that of a partition by licitation, where the owner of an undivided half buys the whole property and remains indebted to the other owners in common for one-half the price.

In this view of the case, and considering the familiar principle that the exception of no cause of action admits for the purposes of its consideration the allegations of the petition to be true, we are constrained to the conclusion that the exception should have been dismissed.

It is said in the exception itself, and contended in argument, that the petition itself shows that the claim of the minors is unliquidated, but we do not so understand it. The petition, indeed, asks "that in case it be disputed by the creditors, the claim of the wards against the estate of their father be recognized, and its amount fixed without regard to that mentioned in the deliberations of the creditors, or in this petition, but according to what may be established by the evidence;" but this is in the alternative only, and cannot, by hypothesis merely affect the rights of the minors, as fixed by the facts which otherwise appear.

It is therefore ordered that the judgment appealed from be reversed, the exception dismissed, and the cause remanded to be further proceeded with according to law, the appellee as administrator to pay the costs of the appeal.